UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| ARTURO BURROLA URQUIDI and<br>MARY ADELA URQUIDI,<br><br>　　Plaintiffs,<br><br>v.<br><br>THE CITY OF PECOS, COUNTY OF<br>REEVES, PECOS POLICE<br>DEPARTMENT, R. CRUM, *individually*<br>*and in his official capacity as an officer of the*<br>*Texas Department of Public Safety*, and<br>JOHN DOES 1–5, *officers of Pecos Police*<br>*Department, individually and in their official*<br>*capacities*,<br><br>　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 4:15-CV-00027-DCG |

## ORDER GRANTING MOTION TO DISMISS

Presently before the Court is Defendant R. Crum's ("Officer Crum") "Amended Motion to Dismiss" ("Motion") (ECF No. 26), filed on April 26, 2016. Plaintiffs Arturo Burrola Urquidi ("Arturo") and Mary Adela Urquidi ("Mary") (collectively "Plaintiffs") responded on June 13, 2016. *See* Resp., ECF No. 32. Officer Crum replied on June 14, 2016. *See* Reply, ECF No. 34. After reviewing the Motion, responses, and applicable law, the Court hereby grants the motion.

### I.   BACKGROUND[1]

Plaintiffs allege that their rights were violated in the course of an arrest that arose from a case of mistaken identity. *See* Original Compl. ¶¶ 13–63. The alleged violations arose when on or about December 27, 2013, Plaintiffs, while in the course of hauling two oversized loads in

---

[1] Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court assumes as true the following well–pleaded facts from Plaintiffs' "Original Complaint" (ECF No. 1).

their 18–wheelers from Pecos, Texas, to Orla, Texas, were stopped by Officer Crum of the Texas Department of Public Safety. *Id.* at ¶¶ 13–14.

Officer Crum examined Plaintiffs' paperwork, insurance and licenses following the routine stop. *Id.* at ¶¶ 14–15. He informed Mary that she was free to go, but told Arturo that he was receiving a citation for his truck being overweight. *Id.* at ¶ 15. Arturo provided an overweight permit but Officer Crum still issued the citation because the officer claimed that the permit did not allow him to haul the amount of weight that was on his truck. *Id.* at ¶ 16.

After the citation was issued, Officer Crum informed Arturo that the United States Marshals in El Paso had issued a warrant for his arrest. *Id.* at ¶ 17. Plaintiffs disputed the warrant and informed Officer Crum that it was a mistake. *Id.* at ¶¶ 17, 19–21. Plaintiffs allege that Officer Crum would not state the basis for the warrant, and eventually Arturo was taken to jail in Pecos. *Id.* at ¶¶ 23–24.

Following Arturo's arrest, Mary called Arturo's probation officer who confirmed that she was unaware of a warrant and expressed ignorance as to why Arturo was arrested and jailed. *Id.* at ¶ 26. Next, Mary consulted an employee at a law office, who investigated and informed her that Arturo was being charged with "serious offenses." *Id.* at ¶¶ 27, 30. During the course of their investigation, they discovered that Arturo Burrola Urquidi had been mistaken for Arturo Chous Urquidi ("Chous"), an individual with known ties to the Sinaloa drug cartel. *Id.* at ¶¶ 33–36

When Mary called the jail to share this information, she was told that the officers had arrested the right man. *Id.* at ¶ 38. Over the next few days, she attempted to visit Arturo in jail but was denied visitation. *Id.* at ¶ 40. On January 2, 2014, Arturo appeared at a hearing at the Federal Courthouse in Pecos. *Id.* at ¶ 46. When he informed the Magistrate Judge that he was

not Chous, he was given five days to hire a lawyer and prove his identity before he was transferred to El Paso, Texas. *Id.* at ¶ 48. The very next day, Mary received a phone call informing her that Arturo was being released and that she needed to come pick him up from the jail. *Id.* at ¶ 54. The citation for the over–loaded truck was subsequently also dropped on January 5, 2014. *Id.* at ¶ 58.

According to Plaintiffs, this sequence of events caused them further difficulty when Arturo attempted to return to work and was told he could not drive his truck, as his employer believed he now had a criminal record. *Id.* at ¶ 55. Further, Plaintiffs allege that because of these events, they suffered economic loss, humiliation, mental anguish, and emotional distress. *Id.* at ¶¶ 96–97.

Plaintiffs commenced suit on May 5, 2015. *See* Original Compl. On May 26, 2016, the case was reassigned to this Court for all further proceedings. *See* Order to Transfer, ECF No. 29. On March 24, 2016, Officer Crum filed his initial motion to dismiss. *See* ECF No. 22. Before Plaintiffs were able to respond, Officer Crum filed the instant Motion on April 26, 2016, amending his motion to dismiss. *See* Mot. Plaintiffs responded on June 13, 2016. *See* Resp. Officer Crum replied on June 14, 2016. *See* Reply. The matter is now ripe for review.

## II.   LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure sets forth the applicable standard of pleading. The rule requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). To be sufficient, a complaint must include factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A formulaic recitation of the elements of a cause of action, or facts that do not permit the court to infer more than the mere possibility of misconduct, fails to satisfy the pleading requirements of Rule 8(a).  *Id.*

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the facts pled must permit the court to infer that the plaintiff's right to relief is plausible.  *Id.* at 678–79.  To allege a plausible right to relief, the facts pled must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient.  *Twombly*, 550 U.S. at 566–69.  "Determining whether a complaint states a plausible claim for relief . . . [is] a context–specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

### III.   DISCUSSION

#### A.   *Official Capacity Claims*

Plaintiffs have sued Officer Crum in his official and individual capacities.  Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent[.]"  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978); *see also James v. Tex. Collin Cnty.*, 535 F.3d 365, 375 n.6 (5th Cir. 2008) (stating that claims against officials in their official capacities are actually claims against the county).  When, as in this case, the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant.  *See*, *e.g.*, *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the

respective governmental entities themselves."). To the extent that Plaintiffs refer to Officer Crum as acting in his official capacity, the Court finds that it is appropriate to dismiss Plaintiffs' § 1983 claims. *But see McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (noting that a state official in her or his official capacity, when sued for injunctive relief, is a "person" under § 1983 because official–capacity actions for prospective relief are not treated as actions against the state). Accordingly, the Court grants the Motion as to the official capacity claims against Officer Crum.

### B. Individual Capacity Claims

Officer Crum argues that he is entitled to qualified immunity for claims against him in his individual capacity. *See* Mot. 2–3. Qualified immunity is "*an immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Accordingly, it "protects an official not only against standing trial, but also against incurring the burdens of such pretrial matters as discovery." *Langford v. Union Cnty. Miss.*, 51 F. App'x 930, 2002 WL 31415376, at *2 (5th Cir. 2002) (*per curiam*) (quotation omitted).

The precise procedure for evaluating qualified immunity is unclear. Some courts have required that the government official seeking qualified immunity first show an entitlement to the defense by arguing that the alleged violation occurred in his official capacity and was within the scope of his discretionary authority, while other courts have not imposed such a requirement, requiring only a plea of good faith. *Compare Cronen v. Tex. Dep't of Human Servs.,* 977 F.2d 934, 939 (5th Cir. 1992), *with Michalik v. Hermann,* 422 F.3d 252, 257, 262 (5th Cir. 2005).

Here, Plaintiffs have identified Officer Crum as an officer of the Texas Department of Public Safety. *See* Original Compl. ¶ 14. Plaintiffs allege that Officer Crum made a routine stop of Arturo and subsequently cited him for the traffic offense and arrested him on an outstanding

warrant. *Id.* at ¶¶ 14, 16, 24.  Officer Crum does not dispute these facts in his Motion and states that he was acting "in his official capacity as an employee of the Texas Department of Public Safety, and with good faith belief that his actions were proper under the constitutions and laws of the United States and the State of Texas."  Mot. 2–3.  Officer Crum has met his initial burden.

Once pled by the defendant, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*)).  In order to meet this burden, a plaintiff must prove: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "[C]onduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"  *Id.* at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (alterations omitted).  In other words, "the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Mangieri v. Clifton,* 29 F.3d 1012, 1017 (5th Cir. 1994) (quoting *Hunter v. Bryant,* 502 U.S. 224, 229 (1991)).  This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The Court will first determine whether Plaintiffs have alleged a violation of constitutional or statutory rights.[2]  *See id.*; *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001).  If such a

---

[2] Despite the two–pronged analysis, "courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand.'"  *See Watts v. City of Jackson*, 664 F. Supp. 2d 680, 688–89 (S.D. Miss. 2009) (quoting *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009)).

violation is alleged, the Court will then consider whether the right was clearly established. *McClendon*, 305 F.3d at 323. Ultimately, a state actor is entitled to qualified immunity if his conduct was objectively reasonable in light of the legal rules that were clearly established at the time of the incident. *See Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998) (citing *Pierce v. Smith*, 117 F.3d 866 (5th Cir. 1997); *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993)). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Kinney v. Weaver*, 367 F.3d 337, 349–50 (5th Cir. 2004) (*en banc*) (alteration in original) (quoting *Anderson v. Creighton,* 483 U.S. at 640. "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Club Retro*, 568 F.3d at 194–95 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). In the context of a motion to dismiss, "if the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the defense of qualified immunity will not sustain a motion to dismiss under Rule 12(b)(6)." *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000) *overruled on other grounds by McClendon*, 305 F.3d at 329.

Plaintiffs have claimed a violation of his Fourth Amendment rights. *See* Original Compl. ¶¶ 76–79. By virtue of its "incorporation" by the Fourteenth Amendment, the Fourth Amendment requires the government to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty. *See Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). Meaning, probable cause must exist before the government may arrest an individual. *See Harris v. Payne*, 254 F. App'x 410, 415 (5th Cir. 2007) (citing U.S. Const.

amend. IV; *Freeman v. Gore,* 483 F.3d 404, 411 (5th Cir. 2007)). In this case, Plaintiff was mistakenly arrested pursuant to a facially valid warrant. *See* Original Compl. ¶¶ 17, 21. Plaintiffs have not argued that the warrant was not based on probable cause or that it was faulty or improperly obtained.

The United States Supreme Court has established clear precedent regarding mistaken arrests pursuant to facially valid warrants. *See, e.g.*, *Hill v. California*, 401 U.S. 797, 802 (1971); *Baker v. McCollan*, 443 U.S. 137, 145–46 (1979). In *Hill*, the Supreme Court held that "[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill*, 401 U.S. at 802 (internal quotation marks omitted); *see also McCollan*, 443 U.S. at 145–46 (determining that an arrest and subsequent three–day detention were valid despite plaintiff's protestations of innocence and mistaken identity, even when plaintiff's protestations turned out to be true).

The Fifth Circuit has applied this precedent on numerous occasions. *See, e.g.*, *Sanchez v. Swyden,* 39 F.3d 464, 465–69 (5th Cir. 1998); *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994). In *Swyden*, an individual was mistakenly detained by police because his name and general description matched those on a warrant. *See Swyden*, 139 F.3d at 468–69. The Fifth Circuit held that he did not establish a violation of a clearly established constitutional right even though the police continued to detain him after they were faxed information several hours following his arrest that indicated that he was the incorrect person. *See id.* at 465. The individual was subsequently released after the judge at his probable cause hearing ordered the police to confirm his identity. *See id.* at 466.

In *Blackwell*, the Fifth Circuit court laid out the proper inquiry in a mistaken identity arrest case. In that case, a police officer arrested the plaintiff, who had the same first name and

general appearance as a person described in a warrant. *See Blackwell*, 34 F.3d at 300. The plaintiff presented the police officer with her driver's license, which showed she had a different last name than the warrant described, but the officer did not look at it. *See id.* The Fifth Circuit stated that the critical question was "not whether a reasonable officer would have looked at the driver's license to confirm the name and other identifying information" but rather whether a reasonable officer could believe the plaintiff was the suspect. *Id.* at 304. The court ruled that the officer was entitled to qualified immunity, even if he could have taken other reasonable actions to determine the plaintiff's true identity. *See id.* at 303 (stating that "[t]he Fourth Amendment is not violated by an arrest based on probable cause, even if the wrong person is arrested, if the arresting officer had a reasonable, good faith belief that he was arresting the correct person").

Here, Arturo was arrested pursuant to a facially valid warrant. Because the warrant was facially valid, Officer Crum is presumed to have had probable cause to arrest Arturo. *See Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 280 (5th Cir. 1992). Officer Crum was not required to conduct an error–free investigation, but simply act in a reasonable manner with a good faith belief. *See Blackwell*, 34 F.3d at 303. The Court concludes that it was objectively reasonable for Officer Crum to arrest Arturo pursuant to the warrant, and Officer Crum is entitled to qualified immunity on this claim.

### C.  State Tort Claims

Plaintiffs assert claims of malicious prosecution, intentional and negligent infliction of emotional distress, false imprisonment, and false arrest under Texas law. Original Compl. ¶¶ 83–95. The Court holds that Plaintiffs' claims are barred by clear Texas Supreme Court precedent. *See Franka v. Velasquez*, 332 S.W.3d 367, 369–85 (Tex. 2011).

Section 101.106(f) of the Texas Tort Claims Act provides that if a suit is filed against an employee of a governmental unit based upon conduct within the general scope of that employment, and if it could have been brought against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  *See* Tex. Civ. Prac. & Rem Code § 101.106(f); *Franka*, 332 S.W.3d at 369–85.  In *Franka*, the Texas Supreme Court resolved a split amongst the court of appeals.  It explained that § 101.106(f) was intended to "foreclose suit against a government employee in his individual capacity if he was acting within the scope of employment." *Franka*, 332 S.W. 3d at 381.  In waiving governmental immunity for governmental units, "the Legislature correspondingly sought to discourage or prevent recovery against an employee." *Id.* at 384.  *Franka* therefore stands for the proposition that Texas government employees are entitled to dismissal of all state law tort claims brought against them arising out of acts taken within the scope of their employment, "regardless of whether the [Texas Tort Claims Act] waives immunity from suit." *Id.* at 385.

In the instant case, Plaintiffs make clear that Officer Crum acted within the scope of his employment as a Texas Department of Public Safety law enforcement official during the incident in question.[3]   Because the alleged act which forms the basis of Plaintiffs' state law tort claims was entirely within the scope of Officer Crum's government employment, those claims must be dismissed pursuant to § 101.106(f).

---

[3] Although the Texas Supreme Court has cautioned that "[w]hether an employee's intentional tort is within the scope of employment is a . . . complex issue," *see Franka*, 332 S.W.3d at 381 n.63, the facts as pled by Plaintiffs clearly establish Officer Crum acted within the scope of his employment.
> "Whenever in this complaint it is alleged that any Defendant did any act, thing, and/or omission, it is meant that Defendant and/or Defendant's officers, agents, servants, employees or representatives did such act, thing and/or omission and that at the time it was done with full authorization and/or ratification of Defendant or *done in the normal and routine course and scope of employment* of Defendant and/or Defendant's officers, agents, servants, employees or representatives."

Original Compl. at ¶ 12 (emphasis added).

### D. *Plaintiffs' Request to Amend Complaint*

Plaintiffs are technically afforded an opportunity under § 101.106(f) to voluntarily dismiss the state law tort claims against Defendant and replead them against the relevant governmental unit within thirty days of a motion to dismiss. Plaintiffs' therefore request "that if the Court is inclined to grant any portion of [Officer Crum's] Amended Motion to Dismiss, then Plaintiffs asks for leave to amend their Original Complaint to set forth the factual basis of their claims with more particularity." Resp. 14. Normally, "leave to amend shall be freely given when justice so requires," and should be granted absent some justification for refusal. Fed. R. Civ. P. 15(a)(1)(2); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, granting Plaintiffs leave to amend their complaint as to Officer Crum would be futile. Claims against Officer Crum in his official capacity are redundant to Plaintiffs' claims against the county and are thus barred as a matter of law. Furthermore, Plaintiffs do not dispute that the initial arrest was conducted pursuant to a valid warrant, even though the warrant was not for Arturo. That fact bars Plaintiffs' § 1983 claims against Officer Crum in his individual capacity as a matter of law. Finally, the Texas Supreme Court has clearly stated that Plaintiffs' state law tort claims against Officer Crum in his individual capacity are barred by § 101.106(f) of the Texas Tort Claims Act. Because those same claims are also barred against the relevant governmental unit, *see* Tex. Civ. Prac. & Rem. Code § 101.057 (no waiver of sovereign immunity for any claim "arising out of assault, battery, false imprisonment, or any other intentional tort . . . "), repleading those claims against it would be futile.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant R. Crum's "Amended Motion to Dismiss" (ECF No. 26) is **GRANTED**.

IT IS ORDERED that Plaintiffs' claims against Defendant R. Crum in his official capacity are **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED that Plaintiffs' claims against Defendant R. Crum in his individual capacity are **DISMISSED WITH PREJUDICE.**

IT IS LASTLY ORDERED that the **CLERK OF THE COURT** shall **TERMINATE** Defendant R. Crum from the above–captioned and numbered cause of action.

So ORDERED and SIGNED this 26th day of July, 2016.

**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**